RECEIVED
SDNY PRO SE OFFICE
2026 JAN 20 PM 4:53

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
RICARDO PAULINO,
Plaintiff, Pro Se,

26 CV 0517

-against-

THE CITY OF NEW YORK;
DETECTIVE CHASTITY JAIME, Shield No. 4120 (NYPD);
DETECTIVE CHRISTOPHER WINTERMUTE (NYPD Warrant Section);
DETECTIVE SEAN CONWAY (NYPD);
DETECTIVE JUSTIN HOLLEY (NYPD);
ASSISTANT DISTRICT ATTORNEY CHRISTINA AWAD (New York County D.A.'s Office);
JOHN/JANE DOES 1–10 (individuals presently unknown),
Defendants.
--------------------------------------------------------x

COMPLAINT
(Jury Trial Demanded)

Plaintiff Ricardo Paulino ("Plaintiff"), proceeding pro se, alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil rights action under 42 U.S.C. § 1983 arising from Plaintiff's arrest and prosecution in New York County, which ended in a complete acquittal after trial and dismissal of perjury counts as immaterial.

2. Plaintiff brings claims for, inter alia, malicious prosecution, denial of a fair trial / due process (including suppression and belated disclosure of material evidence and misleading representations regarding the existence of evidence), failure to intervene, and municipal liability under Monell.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

4. This Court has supplemental jurisdiction over related state-law claims, if any, under 28 U.S.C. § 1367.

5. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to the claims occurred in New York County, within the Southern District of New York.

## III. PARTIES

6. Plaintiff Ricardo Paulino is a resident of New York County, New York.

7. Defendant City of New York ("City") is a municipal entity responsible for the policies, practices, training, supervision, and discipline of the NYPD, and for paying judgments/settlements arising from NYPD misconduct, and for municipal customs that cause constitutional violations.

8. Defendant Detective Chastity Jaime (Shield No. 4120) was at all relevant times an NYPD detective involved in the investigation and prosecution-related evidence handling in Plaintiff's criminal case, acting under color of state law.

9. Defendant Detective Christopher Wintermute was at all relevant times an NYPD detective assigned to the NYPD Warrant Section, acting under color of state law.

10. Defendant Detective Sean Conway was at all relevant times an NYPD detective involved in the investigation and/or evidence handling in Plaintiff's criminal case, acting under color of state law.

11. Defendant Detective Justin Holley was at all relevant times an NYPD detective involved in the investigation and/or evidence handling in Plaintiff's criminal case, acting under color of state law.

12. Defendant Assistant District Attorney Christina Awad ("Awad") was at all relevant times an ADA at the New York County District Attorney's Office, and participated in evidence handling, discovery representations, and disclosure decisions in Plaintiff's criminal case. Plaintiff alleges conduct described below as investigative/administrative and/or outside protected advocacy functions to the extent applicable.

13. Defendants John/Jane Does 1–10 are persons whose identities are currently unknown, including supervisors, liaisons, or other personnel who participated in, approved, or failed to stop the misconduct alleged. Plaintiff will seek leave to amend to name them when identified.

## IV. FACTUAL ALLEGATIONS

### A. The underlying incident, arrest, and restraints on liberty

14. The prosecution alleged an incident occurred on or about January 12, 2023, approximately 3:00 a.m. to 5:00 a.m., inside 15 St. James Place, Apt. 8I, New York, NY 10038.

15. Plaintiff was seized and arrested on January 20, 2023 at or about 8:15 a.m. to 9:20 a.m., inside 137 Centre Street, New York, NY.

16. Plaintiff was arraigned on January 21, 2023 on a criminal court complaint in New York County.

17. After arraignment, Plaintiff was subjected to significant restraints on liberty, including a $75,000 bond with a 10% down requirement, mandatory court appearances, and orders of protection prohibiting contact with Teressa Steed and Cassandra Steed.

18. Plaintiff was permitted to travel within the continental United States and was not required to surrender a passport.

19. These restraints remained in effect during the pendency of the prosecution.

B. Indictments, discovery compliance representations, and belated disclosures

20. On April 7, 2023, Plaintiff was indicted under Indictment No. IND-71758-23, including serious felony charges.

21. On May 4, 2023, Plaintiff was arraigned on the indictment in New York County Supreme Court, Criminal Term.

22. On or about July 7, 2023, the prosecution filed an initial Certificate of Compliance ("COC") and statement/certification of readiness for trial.

23. On June 25, 2024, the prosecution disclosed additional NYPD materials that were not previously provided, including items the defense had requested.

24. On June 25, 2024, in writing, Awad represented to defense counsel that "handwritten notes" did not exist.

25. On or about July 23, 2024, the prosecution belatedly disclosed Detective Jaime's handwritten spiral notes containing pre-recorded statements and investigative details, contradicting the earlier representation that such notes did not exist.

26. On or about June 26, 2024 and July 19, 2024, the prosecution belatedly disclosed text-message correspondence between the complaining witness and Detective Jaime ("Texts with Detective"), including additional text exchanges that had previously been redacted.

27. On or about August 16, 2024, the prosecution filed a Supplemental Certificate of Compliance ("SCOC") asserting the belated materials were not previously in the People's "actual possession or control" despite due diligence, while also acknowledging the materials were NYPD-held items.

28. Plaintiff alleges that these belated disclosures were material, exculpatory and/or impeaching, and their withholding or late production impaired trial preparation, investigation, and cross-examination.

C. Evidence affecting credibility, timeline, and defense preparation

29. The prosecution possessed or controlled evidence bearing on critical timing and credibility issues, including communications relevant to "prompt outcry" and investigative steps.

30. Plaintiff alleges that records were produced in redacted or incomplete form and/or produced so late that defense counsel could not reasonably use them to investigate, retain experts, subpoena records, or adjust defense strategy.

31. Plaintiff alleges these disclosure failures and representations were not harmless clerical mistakes but were part of a pattern of handling evidence in a manner that was reasonably likely to mislead the defense and affect the factfinder's understanding of key issues.

D. "Trial surprise" and prejudicial nondisclosure concerning background evidence

32. During trial, the prosecution elicited extensive testimony about the complaining witness's background, including years in a highly controlling polygamous cult in Utah and subsequent rescue, and used it to explain conduct relevant to the prosecution's narrative.

33. The trial court stated on the record, in substance, that the emergence of this information at trial came as a shock to the court and the defense, and that it was not simply "background," and the court recognized that the nondisclosure prejudiced the defense by foreclosing valuable avenues of investigation (including the potential to consult/retain an expert, subpoena records, or conduct further inquiry).

34. Plaintiff alleges that this was effectively "trial by surprise/ambush" as to a significant subject that the prosecution chose to emphasize to the jury, while the defense was deprived of a fair opportunity to investigate and respond in advance.

35. Plaintiff alleges this prejudice was reasonably likely to influence the jury because it affected the narrative presented, the perceived credibility of witnesses, and the defense's ability to test the prosecution's framing through investigation and cross-examination.

E. Attempt to call ADA Awad as a defense witness; dispute about meetings/notes

36. During trial proceedings, defense counsel placed the prosecution on notice of an intention to call ADA Awad as a defense witness regarding issues including meetings, whether notes existed, and related discovery representations.

37. The trial court denied the request to call Awad as a witness but indicated it would craft an instruction to the jury concerning the number of meetings and whether notes existed.

38. Plaintiff alleges this episode underscores that factual disputes existed about prosecution-side meeting history and documentation, and that the court recognized the need to address the issue before the jury.

F. Defense witness present at the home; exculpatory testimony

39. Plaintiff had a defense witness, a woman who was present at the home and later testified at trial.

40. Plaintiff alleges this witness testified she observed the complaining witness and saw her walking back into the bedroom and did not hear screaming or anything indicating distress.

41. Plaintiff alleges the prosecution was aware a defense witness existed and was present at the location, but did not meaningfully investigate exculpatory aspects of that witness's observations.

42. Plaintiff further alleges Awad did not know the details of the defense witness's story, despite being aware the witness was present at the home, demonstrating a failure to pursue exculpatory leads and/or a disregard of material information that bore on guilt, credibility, and the narrative presented to the jury.

G. Termination of the criminal case

43. On July 8, 2025, perjury counts were dismissed during trial as legally immaterial.

44. On July 10, 2025, after a jury trial, Plaintiff was completely acquitted of the remaining charges.

45. The criminal case therefore terminated in Plaintiff's favor.

V. CLAIMS FOR RELIEF

Plaintiff repeats and realleges paragraphs 1 through 45 as if fully set forth herein.

COUNT I — MALICIOUS PROSECUTION (42 U.S.C. § 1983; Fourth Amendment)
(Against the City and Individual Defendants)

46. Defendants initiated and/or continued a criminal prosecution against Plaintiff without probable cause, and with malice or a wrongful purpose.

47. Plaintiff suffered a post-arraignment seizure and liberty deprivation including a $75,000 bond with 10% down requirement, mandatory court appearances, and orders of protection.

48. The prosecution terminated in Plaintiff's favor by dismissal of perjury counts as immaterial on July 8, 2025 and complete acquittal on July 10, 2025.

49. Defendants 'acts and omissions, including withholding/belated production of material evidence and failure to pursue exculpatory leads, contributed to the continuation of prosecution and the deprivation of Plaintiff's constitutional rights.

COUNT II — DENIAL OF FAIR TRIAL / DUE PROCESS (42 U.S.C. § 1983; Fourteenth Amendment)
(Against the City and Individual Defendants)

50. Defendants suppressed, delayed, redacted, and/or misrepresented the existence of material evidence favorable to the defense, including impeachment and exculpatory information.

51. This included, among other items, belated disclosure of Detective Jaime's handwritten notes and belated disclosure of text communications between the complaining witness and Detective Jaime, as well as disclosure practices that deprived Plaintiff of meaningful pretrial investigation and trial preparation.

52. The nondisclosure and late disclosure of significant background evidence later emphasized at trial prejudiced the defense, and the trial court recognized the prejudice and the defense's inability to investigate and respond adequately.

53. Defendants 'conduct was reasonably likely to influence the jury because it affected what the jury heard, how witnesses were perceived, and whether the defense could effectively challenge the prosecution's narrative.

COUNT III — FAILURE TO INTERVENE (42 U.S.C. § 1983)
(Against Individual NYPD Defendants and Doe Defendants)

54. Each NYPD defendant and Doe defendant had a realistic opportunity to prevent or mitigate the constitutional violations described above, including by ensuring evidence was preserved, collected, reviewed, and timely disclosed, and by correcting known misrepresentations about the existence of materials.

55. These defendants failed to intervene, thereby enabling and prolonging the violations and the resulting harm.

COUNT IV — MUNICIPAL LIABILITY (MONELL) (42 U.S.C. § 1983)
(Against the City of New York)

56. The constitutional violations suffered by Plaintiff were caused by the City's policies, customs, and practices, including inadequate training, supervision, and discipline regarding: (a) preservation and review of NYPD investigative files and devices; (b) timely disclosure of impeachment and exculpatory evidence; (c) preventing "trial by surprise" through discovery compliance; and (d) compliance with clearly established constitutional obligations.

57. On information and belief, the City maintained practices that permitted prosecutors and NYPD personnel to rely on incomplete portals/uploads and representations without meaningful inspection of physical files and device communications, creating predictable Brady-type failures and belated disclosures.

58. The City's deliberate indifference to these risks caused the violations alleged, and Plaintiff's resulting damages.

VI. DAMAGES

59. As a direct and proximate result of Defendants 'acts and omissions, Plaintiff suffered damages including, but not limited to: loss of liberty; emotional distress; humiliation; reputational harm; disruption of career and professional opportunities; financial strain and cascading economic hardship; and other consequential damages.

60. Plaintiff further suffered financial harm including inability to maintain normal payment obligations, including student loan obligations and consumer credit obligations, due to the prolonged prosecution and its direct impacts.

61. Plaintiff also seeks attorneys 'fees and costs pursuant to 42 U.S.C. § 1988 if counsel is later retained and/or as otherwise permitted by law.

VII. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

A. Awarding compensatory damages against all liable defendants;
B. Awarding punitive damages against the individual defendants to the extent permitted by law;
C. Awarding reasonable costs and fees, including pursuant to 42 U.S.C. § 1988 where applicable;
D. Awarding pre- and post-judgment interest as permitted by law; and
E. Granting such other and further relief as the Court deems just and proper.

VIII. JURY TRIAL DEMANDED

62. JURY TRIAL DEMANDED.

IX. SIGNATURE

Dated: 1/20, 2026

Respectfully submitted,

Ricardo Paulino, Plaintiff Pro Se
15 St. James Place, Apt. 8I
New York, NY 10038
Telephone: (646) 637-4180
Email: rickpaulino1@yahoo.com