UNITED STATES DISTRICT COURT

RECEIVED
SDNY PRO SE OFFICE

2026 MAR -5  AM 10: 44

SOUTHERN DISTRICT OF NEW YORK

RICARDO PAULINO,

Plaintiff Pro Se,

v.

THE CITY OF NEW YORK,

DETECTIVE CHASTITY JAIME, Shield No. 4120, NYPD, in her individual capacity,

DETECTIVE CHRISTOPHER WINTERMUTE, NYPD Warrant Section, in his individual capacity,

DETECTIVE SEAN CONWAY, NYPD, in his individual capacity,

DETECTIVE JUSTIN HOLLEY, NYPD, in his individual capacity,

ASSISTANT DISTRICT ATTORNEY CHRISTINA AWAD, in her individual capacity,

JOHN AND JANE DOES 1 through 10,


Defendants.

Case No. 1:26-cv-00517

FIRST AMENDED COMPLAINT

Jury Trial Demanded

Plaintiff Ricardo Paulino alleges upon personal knowledge as to himself and his acts and upon information and belief as to all other matters as follows.


I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to these claims occurred in New York County New York.

II. PARTIES

3. Plaintiff Ricardo Paulino is a resident of New York County New York.

4. Defendant City of New York is a municipal entity responsible for the policies customs practices training supervision discipline and evidence handling systems of the New York City Police Department and for NYPD misconduct alleged herein.

5. Defendant Detective Chastity Jaime Shield No. 4120 was at all relevant times an NYPD detective assigned to a Special Victims investigation and acted under color of state law.

6. Defendant Detective Christopher Wintermute was at all relevant times an NYPD detective assigned to the Warrant Section and acted under color of state law.

7. Defendant Detective Sean Conway was at all relevant times an NYPD detective who participated in the January 19 2023 home visit and related investigation and acted under color of state law.

8. Defendant Detective Justin Holley was at all relevant times an NYPD detective who participated in the January 19 2023 home visit and related investigation and acted under color of state law.

9. Defendant Assistant District Attorney Christina Awad was at all relevant times an Assistant District Attorney in the New York County District Attorney's Office. Plaintiff sues Awad in her individual capacity only for non advocative acts outside the core prosecutorial function including

out of court evidence management and discovery administration out of court completeness representations regarding the existence and production of evidence and investigative direction and coordination relating to evidence preservation and disclosure and not for in court advocacy.

10. Defendants John and Jane Does 1 through 10 are presently unknown individuals who participated in the investigation evidence collection preservation redaction disclosure or creation of misleading evidentiary records. Plaintiff will amend to name them when identified.

III. NATURE OF THE ACTION

11. This is a civil rights action under 42 U.S.C. § 1983 arising from Defendants 'initiation and continuation of felony prosecutions without probable cause failure to pursue plainly exculpatory investigative leads fabrication and distortion of the evidentiary record and suppression or belated disclosure of material exculpatory and impeachment evidence that deprived Plaintiff of liberty for approximately two and one half years.

12. Plaintiff was arrested on January 20 2023 and prosecuted in New York County under Indictment Nos. IND-71758-23 and IND-76070-23.

13. In January 2024 three perjury counts were added to the same prosecution. Plaintiff was released the same day and no new bond or additional liberty restraints were imposed beyond those already in place but the perjury counts increased exposure and prolonged the case.

14. On July 8 2025 the trial court dismissed all three perjury counts mid trial. On July 10 2025 after a jury trial Plaintiff was acquitted of the remaining charges. The criminal proceedings terminated in Plaintiff's favor.

IV. JUDICIAL FINDINGS DURING THE CRIMINAL TRIAL

15. During trial the court stated on the record that there had been a pattern of failure of disclosure either timely or altogether.

16. The court instructed the jury that inaccurate information had been provided regarding phone records and that certain information was erroneously withheld and discovered only after a witness had been examined.

17. The court characterized the nondisclosure of material background evidence as a major nondisclosure and a shocking failure of disclosure and stated on the record that the court was fairly appalled and that the nondisclosure had to have a consequence.

18. The court rejected the prosecution's Instagram based consciousness of guilt theory as speculative and barred the jury from drawing any inference of guilt from the inability to view posts.

V. FACTUAL ALLEGATIONS

A. The voluntary encounter and the bar interaction

19. On January 11 2023 Cassandra Steed the complainant Teresa Steed's sister and an initial outcry witness texted Plaintiff requesting that Plaintiff take out Cassandra's male friend who was in town. This message initiated the voluntary social encounter.

20. Cassandra Steed was not present at the bar or during the subsequent events.

21. Plaintiff and Teresa Steed met at a bar. Teresa Steed approached Plaintiff's table came to say hello returned to her friends and then left her friends and came back to Plaintiff's table. She engaged in conversation and remained at the table voluntarily.

22. Plaintiff offered and purchased a drink for Teresa Steed and Plaintiff possesses receipts.

23. While Plaintiff was paying the bill with his back turned Teresa Steed took a picture next to Plaintiff. Discovery includes photographs of Teresa Steed posing at the bar.

24. Teresa Steed later attributed photographs from that night to a club photographer. Plaintiff alleges NYPD and the prosecution did not verify the claimed source or reliability of that asserted club photographer narrative.

B. Travel to Plaintiff's home and the NYCHA complex cameras

25. Teresa Steed left the bar with Plaintiff. They went to another location that was closed and then took an Uber to Plaintiff's residence at 15 St. James Place Apt. 8I New York New York.

26. Plaintiff and Teresa Steed arrived at the NYCHA complex at approximately 3:00 a.m. on January 12 2023.

27. To reach Plaintiff's building entrance they had to walk through the NYCHA complex for approximately four blocks as part of the required path through the complex.

28. Plaintiff alleges that during this walk Teresa Steed displayed no visible signs of distress or incapacitation.

29. Plaintiff alleges the NYCHA complex and precinct linked PSA cameras cover the route within the complex and that NYPD had the ability to request and obtain such footage in a serious felony investigation and that NYPD policy and practice required preservation of such footage in serious felony investigations.

30. Plaintiff further alleges that no footage of the four block route through the complex was preserved or produced by NYPD or the prosecution.

31. The only footage produced was limited building footage from the front building entrance the hallway entrance and the elevators.

32. That limited building footage shows Teresa Steed entering the building normally and later shows a calm goodbye in the elevator area including a kiss and hug at departure.

C. January 19 2023 home visit and refusal to pursue plainly exculpatory leads

33. On January 19 2023 Detectives Conway and Holley arrived at Plaintiff's residence with body worn cameras activated.

34. Plaintiff informed Conway and Holley that the encounter was consensual and specifically directed them to the existence of NYCHA complex and building video sources that would corroborate calm entry and calm departure.

35. Plaintiff alleges Conway and Holley refused to take reasonable steps to view or secure the available footage and refused to interview building staff or security personnel who could assist with obtaining the relevant footage.

36. Despite being directed to this footage officers declined to request preservation and declined to view it before Plaintiff was arrested the following day.

D. Arrest without probable cause and continuing restraints

37. On January 20 2023 Detective Wintermute arrested Plaintiff based primarily on Teresa Steed's uncorroborated accusation.

38. At the time of arrest Plaintiff alleges there was no objectively reliable evidence establishing forcible compulsion and no basic investigative steps were taken to preserve and review readily obtainable objective evidence that would test the accusation.

39. After arrest Plaintiff was subjected to substantial restraints on liberty including a $75,000 bond with a 10 percent deposit court ordered conditions orders of protection mandatory court appearances and ongoing burdens for approximately two and one half years.

40. During this period Plaintiff traveled domestically and was repeatedly stopped and taken to a separate screening room at airports. Plaintiff alleges these recurring TSA screening events were a direct consequence of the open criminal case and the restraints imposed.

E. Independent defense witness

41. Plaintiff presented a defense witness who was present at the home during the relevant period and testified at trial.

42. Plaintiff alleges this witness testified she heard no screaming no arguing and no sounds of distress and observed nothing consistent with force.

F. Witness steering and controlled call activity

43. Plaintiff alleges Detective Jaime steered and coached the complainant Teresa Steed's post incident communications to shape the evidentiary record.

44. The complainant testified she reached out at the detective's explicit direction including that she attempted to call Plaintiff with the detective and did so at the direction of the detective and did so because the detective asked her to.

45. On January 13 2023 the controlled call attempt occurred while the complainant was physically with Detective Jaime and under her direction and guidance. The complainant called Plaintiff twice using his saved number signed a recording consent form and sent texts while with the detective. Plaintiff did not answer and he texted too busy and later asked if everything was okay. No recorded call was completed.

46. Additional texts continued afterward. The belatedly disclosed texts produced in mid 2024 show Detective Jaime coached the complainant on what to say or text even when she was not physically with the detective including commenting that Plaintiff looked curious because the complainant attempted to call him one day after the failed controlled call.

47. Plaintiff took Detective Jaime's remote coaching and look curious framing to mean she was directing the complainant's communications to portray Plaintiff as evasive or conscious of guilt and shaping the evidentiary record for prosecution use.

48. The complainant also attempted to access Plaintiff's Instagram the same evening to gain more information about him because she did not know his full name and later access could not be obtained. The prosecution attempted to use this to suggest consciousness of guilt and the trial court rejected that theory as speculative and barred any guilt inference from inability to view posts.

49. The complainant also testified to approximately fifteen meetings with the District Attorney's Office and testified that someone took notes at a later meeting beyond the initial interview.

Plaintiff alleges those additional notes were not produced as part of ordinary discovery and became an issue addressed on the record.

50. Plaintiff alleges the delay in producing detective complainant communications and related materials impaired timely investigation impeachment preparation subpoenas and effective cross examination.

G. Medical records and drug use contradictions

51. Plaintiff alleges Lenox Hill Hospital records from January 12 2023 reflect normal vital signs and no acute distress in the manner later portrayed in the prosecution narrative and the records lack objective findings consistent with strangulation as charged.

52. Plaintiff further alleges Teresa Steed initially denied voluntary drug use to hospital staff and to the prosecution and later admitted cocaine use while preparing that night.

H. The 4:42 p.m. call and timeline collapse

53. During trial Teresa Steed admitted on cross examination that she slept until approximately noon on January 12 2023 made no phone calls that morning and made her first call at approximately 4:42 p.m. to Cassandra Steed.

54. Plaintiff alleges the record reflected materially inconsistent versions of the alleged prompt outcry timeline and the inconsistency was material to credibility and to whether any reasonable officer or prosecutor could rely on the outcry narrative as a basis for probable cause.

55. Plaintiff further alleges the court addressed the phone record issue and permitted the jury to consider that information was erroneously withheld and that inaccurate information had been provided regarding calls.

I. Failure to conduct basic credibility investigation and background checks

56. Plaintiff alleges that NYPD and the District Attorney's Office failed to conduct a reasonable background and credibility review of Teresa Steed and Cassandra Steed before initiating and continuing felony prosecution.

57. Discovery materials reflect materially inconsistent biographical statements by Teresa Steed including representations that she attended New York University representations that she attended beauty school and representations that she moved to New York to work at a hair salon in Soho.

58. Plaintiff alleges no meaningful effort was made by NYPD or the District Attorney's Office to verify these representations or reconcile inconsistencies despite reliance on her accusation and Cassandra Steed's corroboration.

59. Plaintiff further alleges that Cassandra Steed's reliability as an outcry witness was not independently assessed despite inconsistent statements regarding the timing of the alleged outcry and objective phone records contradicting that timeline.


J. Misleading non existence and completeness representations and belated productions

60. On or about June 25 2024 ADA Awad represented in writing that specific requested materials did not exist or were not in the People's possession.

61. Those same materials were later produced after defense requests and motion practice. Plaintiff alleges Awad's non existence representation was inaccurate and materially interfered with Plaintiff's ability to investigate subpoena records and prepare impeachment.

K. Cult background nondisclosure and court findings

62. During trial ADA Awad elicited testimony from Teresa Steed and Cassandra Steed about Teresa Steed's upbringing in a polygamous cult and related details.

63. Defense counsel stated on the record that none of this information had been exchanged in discovery and that the information was elicited without prior notice.

64. The court stated on the record that the nondisclosure was a major nondisclosure and that it had to have a consequence and further stated it was a shocking failure of disclosure and that the court was fairly appalled.

L. Perjury counts added then dismissed and favorable termination

65. In January 2024 three perjury counts were added to Plaintiff's existing prosecution. Plaintiff was released the same day and no new bond or additional liberty restraints were imposed beyond those already in place.

66. On July 8 2025 the perjury counts were dismissed mid trial.

67. On July 10 2025 Plaintiff was acquitted of the remaining charges and the criminal proceedings terminated in Plaintiff's favor.

M. Medical education transfer plans and career damages

68. Plaintiff holds a B.S. in Biology and an M.B.A. and completed two full years of medical school toward an M.D.

69. Plaintiff's planned path was to continue medical training and pursue transfer opportunities and clinical progression consistent with completing an M.D. and building a physician executive career that integrates clinical practice and healthcare administration.

70. The approximately two and one half year prosecution and restraints including bond appearances orders of protection the January 2024 rearrest on perjury counts discovery failures and witness steering forced Plaintiff to pause medical school and forgo planned transfer opportunities and related training progression.

71. Plaintiff alleges that during the pendency of serious felony charges and court imposed restraints he could not realistically pursue transfers clinical opportunities or professional advancement and that the prosecution froze his medical trajectory at the end of his second year and caused lasting professional and economic setbacks even after acquittal.

72. Plaintiff alleges he has been unable to service approximately $170,000 in student loans during the prosecution resulting in credit damage and additional financial hardship.

## VI. CLAIMS FOR RELIEF

### COUNT I

Malicious Prosecution (Fourth Amendment)

(Against Jaime Wintermute Conway Holley Does 1 through 10 and the City)

73. Plaintiff repeats and realleges paragraphs 1 through 72 as if fully set forth herein.

74. Defendants initiated and continued criminal proceedings against Plaintiff.

75. Plaintiff suffered a post arraignment deprivation of liberty including bond court appearances orders of protection and travel burdens.

76. The proceedings terminated in Plaintiff's favor by dismissal of the perjury counts on July 8 2025 and acquittal on July 10 2025.

77. Defendants lacked probable cause to initiate and continue the prosecution because they ignored plainly exculpatory evidence and failed to take basic investigative steps to preserve and

review readily obtainable objective evidence including NYCHA complex route footage and building footage and because the complainant accounts contained material inconsistencies including the delayed 4:42 p.m. outcry call and drug use contradictions.

78. To the extent a presumption of probable cause arises from indictment Plaintiff alleges it is rebutted by Defendants 'bad faith and suppression or distortion of the evidentiary record including failure to preserve obtainable NYCHA complex footage steering communications with the complainant misleading or inaccurate evidence handling and withholding or delay of material impeachment and exculpatory evidence.

79. Defendants acted with malice and with reckless disregard for Plaintiff's rights.

COUNT II

Denial of Due Process and Fair Trial

(Fabrication Steering and Distortion of Evidence)

(Against Jaime Awad for non advocative acts only Does 1 through 10 and the City)

80. Plaintiff repeats and realleges paragraphs 1 through 72 as if fully set forth herein.

81. Defendants created shaped or amplified a misleading evidentiary record by steering and coaching the complainant and by pursuing controlled call activity in a manner that shaped narrative rather than tested truth.

82. Defendants advanced and maintained timeline and credibility narratives contradicted by objective records including phone record evidence establishing the complainant's first outgoing call occurred at approximately 4:42 p.m. and not in the morning.

83. These acts caused a deprivation of liberty and impaired Plaintiff's ability to defend litigate bail and pretrial motions and avoid prolonged prosecution.

84. The City is liable to the extent these acts were caused by municipal customs training failures or lack of discipline concerning complainant steering and evidence integrity in sex crime investigations.

COUNT III

Denial of Due Process and Fair Trial

(Suppression Delayed Disclosure and Evidence Integrity Failures)

(Against Awad for non advocative acts only Does 1 through 10 and the City)

85. Plaintiff repeats and realleges paragraphs 1 through 72 as if fully set forth herein.

86. Material exculpatory and impeachment evidence was not preserved not timely disclosed or was disclosed only after prolonged delay including obtainable NYCHA complex route footage that should have been preserved and corrected phone record information addressed on the record.

87. The trial court found a pattern of disclosure failures and characterized the cult background nondisclosure as a major nondisclosure and a shocking failure of disclosure.

88. Plaintiff alleges these failures were driven by non advocative evidence management and discovery administration including decisions about what to reduce to writing for disclosure what to log what to upload and what to provide as complete and unredacted.

89. Plaintiff alleges Awad made or approved out of court completeness representations about evidence and discovery including non existence representations later shown inaccurate by later productions.

90. These failures caused Plaintiff a deprivation of liberty and impaired defense investigation and preparation.

COUNT IV

Failure to Intervene

(Against Conway Holley Wintermute Jaime and Does 1 through 10)

91. Plaintiff repeats and realleges paragraphs 1 through 72 as if fully set forth herein.

92. The individual NYPD Defendants had a realistic opportunity to prevent or mitigate the constitutional violations described above including by preserving and reviewing readily obtainable video sources and by correcting evidence integrity problems but they failed to do so.

COUNT V

Municipal Liability (Monell)

(Against the City of New York)

93. Plaintiff repeats and realleges paragraphs 1 through 72 as if fully set forth herein.

94. The constitutional violations were caused by the City's policies customs and practices including failures to train and supervise NYPD personnel on preserving and obtaining NYCHA and precinct linked camera footage maintaining evidence integrity for serious felony cases avoiding witness steering and ensuring accurate and complete evidence transfer and disclosure.

95. The City's failures were a moving force behind Plaintiff's prolonged deprivation of liberty and damages.

96. Upon information and belief the City has received multiple CCRB and internal complaints regarding NYPD officers 'routine failure to preserve or request NYCHA and PSA complex footage in sexual assault and domestic violence investigations yet has taken no corrective training or disciplinary action.

## VII. DAMAGES

97. Plaintiff suffered loss of liberty emotional distress reputational harm and financial losses including bond and case related expenses repeated court appearances over approximately two and one half years travel burdens including repeated secondary screening at airports and career harm including disrupted medical education transfer plans and delayed medical progression and inability to service approximately $170,000 in student loans resulting in credit damage and hardship.

## VIII. PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests that the Court:

A. Enter judgment in Plaintiff's favor on all Counts.

B. Award compensatory damages in an amount to be determined at trial.

C. Award punitive damages against the individual Defendants.

D. Award costs and reasonable fees to the extent permitted by law.

E. Grant such other and further relief as the Court deems just and proper.

## IX. JURY DEMAND

98. Plaintiff demands a trial by jury on all issues so triable.

Dated: March 3 2026

New York, New York

/s/Ricardo Paulino

RICARDO PAULINO

Plaintiff Pro Se

15 St. James Place Apt. 8I

New York NY 10038

(646) 637-4180

rickpaulino1@yahoo.com

# FedEx

## Reusable Envelope
## Recycle me.

Ricardo Pantoc
15 St. James Pl. Apt. 8;
NY, NY, 16638
Case No. 1:26-cv-00517



TO REUSE: Mark through all previous shipping labels and barcodes.

Align top of FedEx® shipping label here.

Pro SE Unit
30 NY, NY 10007

RECEIVED
SDNY PRO SE OFFICE
2026 MAR -5 AM 10:44

Align bottom of peel-and-stick airbill or pouch here.